IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PAMELA JEAN PEREZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:21-CV-666-KFP |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff filed a Complaint seeking review of the Social Security Administration's decision denying her application for social security disability benefits. Doc. 1. The Court construes Plaintiff's supporting brief (Doc. 17) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 20) as a motion for summary judgment. The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). Docs. 9, 10.

After scrutiny of the record and motions submitted by the parties, the Court finds that Plaintiff's motion for summary judgment is due to be DENIED, the Commissioner's motion for summary judgment is due to be GRANTED, and the decision of the Commissioner is due to be AFFIRMED.

I.     STANDARD OF REVIEW

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record

as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**II.     PROCEDURAL BACKGROUND**

Plaintiff protectively filed an application for period of disability, disability insurance benefits, and supplemental security income, alleging disability as of March 13, 2020. R. 17. When her initial application for benefits was denied, she requested a hearing before an ALJ. Following the ALJ's unfavorable decision, Plaintiff filed a request for review of the hearing decision, which the Appeals Council denied. Thus, the hearing decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g).

**III.    THE ALJ'S DECISION**

The ALJ found that Plaintiff had the severe impairments of ischemic heart disease, hypertension, obesity, plantar fascial fibromatosis, major depressive disorder, and generalized anxiety disorder. R. 19. However, she found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. R. 20. She then found that Plaintiff has the residual functional capacity to perform light work with the following limitations:

2

> occasionally use the lower extremities to push and pull; frequently balance, stoop, kneel, crouch, and crawl; occasionally climb ramps and stairs; no climbing ladders, ropes, and scaffolds; no concentrated exposure to extreme heat, cold, humidity, or wetness; and no work around unprotected heights or dangerous machinery such as a forklift. The claimant can perform simple routine, repetitive tasks with few [workplace] changes and can sustain concentration and attention for two-hour periods.

R.22. After considering Plaintiff's experience as a child daycare worker and the testimony of a vocational expert, the ALJ found that Plaintiff cannot perform her past relevant work. R. 27. However, given Plaintiff's age, education, work experience, and RFC, the ALJ found other jobs in the national economy that Plaintiff could perform, specifically, garment folder, marker, and garment sorter. R. 28. Thus, the ALJ concluded Plaintiff had not been under a disability from the alleged onset date through the date of the ALJ's decision. R. 29.

## IV.  DISCUSSION

Plaintiff raises three issues for this Court's review: (1) the ALJ failed to articulate her consideration of the prior administrative medical finding of Dr. Alton James; (2) the RFC is not based on substantial evidence; and (3) Plaintiff presented additional evidence to the Appeal Council warranting remand.

### A.  Dr. James's Prior Administrative Medical Finding

Dr. Alton James completed a disability determination at the reconsideration level on August 27, 2020. R. 98. In that prior administrative medical finding, Dr. James found that Plaintiff retains the residual functional capacity to perform light work with the following limitations: occasional pushing and pulling with her lower extremities; frequent balancing, stooping, kneeling, and crouching; occasional crawling; frequent climbing of ramps and stairs; occasional climbing of ladders, ropes, and scaffolds; no concentrated

3

exposure to extreme cold, extreme heat, wetness, or humidity; and no exposure to unprotected heights or machinery hazards. R. 95–98. Thus, Dr. James's finding mirrors the ALJ's RFC except that it is less restrictive on climbing and more restrictive on crawling.[1] In her decision, the ALJ failed to mention Dr. James's finding, and Plaintiff contends remand is warranted based on a failure to articulate the persuasiveness of his finding, as required by 20 C.F.R. § 404.1520c(b):

> [T]he ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship), (4) specialization, (5) other factors. *See* 20 C.F.R. § 404.1520(c)(a)–(c) (2020).[2] An ALJ must explain how he considered the factors of supportability and consistency. The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. (*Id.*). The ALJ may but is not required to explain how he considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(3) (2020).

*Nix v. Saul*, No. 4:20-CV-790-RDP, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021).

Under these regulations, an ALJ is required to articulate how persuasive she finds the medical opinions in the record, and she must specifically articulate how she considered the supportability and consistency factors for a medical source's opinion. *Humphries v. Comm'r of Soc. Sec.*, No. 2:20-CV-994-DNF, 2022 WL 831893, at *4–6 (M.D. Fla. Mar. 21, 2022) (citations omitted). This analysis is "directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of

---

[1] Dr. James limited Plaintiff to frequent climbing of ramps and stairs, while the ALJ's limitation was to *occasional* climbing. Dr. James limited her to and occasional climbing of ladders, ropes, and scaffolds, while the ALJ's limitation was no climbing. Dr. James limited Plaintiff to occasional crawling, while the ALJ limited her to frequent crawling.

record—familiar concepts within the framework of social security litigation." *Id*. (citation omitted). However, an error that does not affect ALJ's ultimate decision is harmless and does not constitute a ground for reversal. *Sarli v. Berryhill*, 817 F. App'x 916, 917 (11th Cir. 2020) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *see also Shelton v. Kijakazi*, No. CV-121-154, 2022 WL 3334454, at *5 (S.D. Ga. July 22, 2022), *report and recommendation adopted,* No. CV-121-154, 2022 WL 3330148 (S.D. Ga. Aug. 11, 2022) (citing *Tillman v. Comm'r, Soc. Sec. Admin*., 559 F. App'x 975, 975 (11th Cir. 2014) and *Diorio*, 721 F.2d at 728).

Here, although Plaintiff asserts the failure to articulate the persuasiveness of Dr. James's finding is reversible error, she makes no argument as to how Dr. James's finding would have affected the RFC. In fact, she points to no part of Dr. James's finding that should or should not have been included in the RFC. She identifies no claimed medical condition or work restriction pertinent to Dr. James's finding, and she fails to explain how an analysis of Dr. James's opinion would have changed the ALJ's ultimate decision. Therefore, Plaintiff's argument is based solely on the ALJ's technical performance of her duties and not on its effect on the final decision.

In analyzing this issue, the Court notes that the ALJ did discuss the prior administrative medical finding of Dr. George Hall, a state agency consultant who performed an evaluation at the initial stage in June 2020, only two months before Dr. James performed his evaluation at the reconsideration stage. R. 65–84. Notably, Dr. Hall's finding is identical to Dr. James's finding except that Dr. James included the environmental restrictions of no concentrated exposure to extreme cold, extreme heat, wetness, humidity,

5

and hazards such as heights and machinery.[2] Doc. 17 at 6. In discussing Dr. Hall's opinion, the ALJ stated:

> [T]he opinion of the [Dr. Hall] is only somewhat persuasive (Exhibits 3A and 4A). This opinion found that the claimant was able to perform light work; occasionally push and pull with the lower [extremities]; occasionally climb ladders, ropes, and scaffolds as well as crawl; and could perform all other postural activities. The medical evidence supports additional limitations as noted above in the residual functional capacity. Furthermore, the reference to occasional crawling is not consistent with the record or supported by extensive clinical or other evidence. The ability to frequently kneel and even frequently crouch but then only occasionally crawl is somewhat inconsistent. The cardiac impairments would be more directly addressed in the workplace with the precautions associated with dizziness and the limitation to light work itself.

R. 27. Thus, the ALJ found that Dr. Hall's restrictions were not fully supported by the medical evidence because greater restrictions were warranted except with respect to crawling.

In her decision, the ALJ discussed Plaintiff's activities, which include caring for her daughter, shopping for food, cleaning weekly, driving a car, going outside every day, shopping once a week for forty-five minutes, driving her daughter to school, helping her daughter prepare for school in the mornings, the ability to lift twenty pounds, and the ability to handle changes in routine well. R. 23.

She also reviewed Plaintiff's medical records, which show that she suffers from plantar facial fibromatosis but that shoe inserts are the primary treatment for this condition. R. 23–24. She saw an orthopedic specialist once for this condition in June 2020 but never

---

[2] Plaintiff briefly mentions this difference when stating that the ALJ failed to properly discuss Dr. James's finding. Doc. 17 at 6. However, she merely points out that the ALJ's failure to articulate the persuasiveness of Dr. James's opinion equates to a failure to explain how she considered these restrictions, with no explanation as to how they relate to Plaintiff's medical conditions or ability to work.

returned to seek further treatment. Plaintiff has had two heart attacks, but the January 2021 medical opinion from her cardiology specialist, Dr. Pinson, indicate that she had stents placed in July 2019 but afterward had no residual obstructive coronary artery disease and normal left ventricular function. R. 26-27, 473-89. Because this opinion was consistent with Plaintiff's other medical records and supported by the cardiologist's own treatment relationship with Plaintiff, the ALJ found his opinion persuasive. R. 27. At her follow-up visit in December 2020, Dr. Pinson wrote that her blood pressure was "currently acceptable" and her reported cardiac symptoms were "possibly GI in origin." R. 477, 479.

In deviating from Dr. Hall's restrictions, the ALJ explained that the greater restrictions on climbing were warranted because of Plaintiff's obesity and the symptoms associated with her heart disease and medication side effects. With respect to the lesser restriction on crawling, the ALJ explained that Dr. Hall's limitation to occasional crawling was inconsistent with his opinion that Plaintiff can frequently kneel and crouch, and Plaintiff has pointed to nothing in her medical records that conflicts with the ALJ's crawling restriction.

In fact, Plaintiff takes no issue with any of the postural limitations in the RFC or in the findings of Dr. Hall or Dr. James. Instead, she argues only that Dr. James listed environmental restrictions unique to his opinion, and, therefore, a failure to discuss the opinion constitutes reversible error. Under these facts, the Court cannot agree. Dr. James's finding is identical to Dr. Hall's finding, except for the additional environmental restrictions, and those were adopted by the ALJ. Further, based on Plaintiff's activities and the medical history discussed above and in the ALJ's decision (R. 22–27), the Court finds

7

the ALJ's conclusions with respect to Dr. Hall's finding are supported by substantial evidence.

Accordingly, it is clear to the Court that an articulation of the persuasiveness of Dr. James's finding would have no bearing on the RFC and would not affect the ALJ's ultimate decision. There is no reason to think the ALJ, having addressed identical restrictions in Dr. Hall's finding, would treat Dr. James's restrictions differently. And there is no reason to think the ALJ, having adopted Dr. James's environmental restrictions in her RFC, would reject those restrictions when discussing his finding. In this context, remand would be a "wasteful corrective exercise." *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (noting that the court has declined to remand "for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision"). Therefore, the Court finds that the ALJ's failure to discuss the persuasiveness of Dr. James's prior administrative medical finding is harmless and that remand is not warranted.

### B.     Plaintiff's RFC

Plaintiff next argues that the RFC is not supported by substantial evidence because the RFC's environmental restrictions were included in Dr. James's opinion but not in the opinions of Dr. Pinson and Dr. Hall, the two opinions she found persuasive or somewhat persuasive. In other words, although Plaintiff claims she is disabled and unable to work, she simultaneously objects to restrictions in the RFC that are *more* limiting than the two medical opinions discussed by the ALJ.

The RFC is a determination the ALJ makes based on all the relevant medical and non-medical evidence in the record. 20 C.F.R. § 416.945(a)(1) and (3). The RFC need not be supported by a medical opinion to find it supported by substantial evidence. *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053-JHE, 2022 WL 860190, at *6–7 (N.D. Ala. Mar. 22, 2022) (stating ALJ not required to base RFC on doctor's opinion) (citing *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014); 20 C.F.R. § 404.1520c(a)). Instead, the ALJ must provide "a sufficient rationale" linking substantial evidence to her legal conclusions, the RFC is supported by substantial evidence.[3] *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016). Thus, to the extent Plaintiff argues that the ALJ erred because the environmental restrictions in the RFC were not included in a specific medical opinion, the argument fails.

Moreover, the ALJ linked each restriction in the RFC, including the environmental restrictions, with evidence in the record. After discussing Plaintiff's activities, the medical records, and the opinion evidence, the ALJ gave the following explanation of how Plaintiff's impairments resulted in the specific limitations in the RFC:

> Therefore, *due to this combination of physical impairments and fatigue associated with her cardiovascular impairments*, the claimant could only lift and carry ten pounds frequently or twenty pounds occasionally. The claimant could still stand and walk for six hours in an eight hour day with normal breaks or sit for six hours in an eight-hour day. However, this would cause a limitation to work only at the light exertional level. *Due to plantar fasciitis*, she can only occasionally use the lower extremities to push and pull. This would *also address her complaint of swelling* although it is only minimally

---

[3] Additionally, even if some evidence exists supporting a more restrictive RFC, if substantial evidence supports the decision, the Court must affirm. *See Jacks v. Comm'r of Soc. Sec. Admin*, 688 F. App'x 814, 819–20 (11th Cir. 2017). Inherent in this statement is the understanding that a plaintiff seeking social security disability benefits will rarely assert that an ALJ erred by including additional, more limiting restrictions, but that is not the case here.

> even suggested in the subjective portion of the record. *Due to obesity and her history of heart disease*, she can only be expected to frequently balance, stoop, kneel, crouch, and crawl. She can occasionally climb ramps and stairs although she should never climbing ladders, ropes, and scaffolds *due to obesity and the symptoms associated with her heart disease and medication side effects*. Furthermore, she should have no concentrated exposure to extreme heat, cold, humidity, or wetness *for the same reason*. *Due to risk of dizziness*, she should have no work around unprotected heights or dangerous machinery such as a forklift.

R. 26 (emphasis added). Again, because the RFC's environmental restrictions place additional limitations on Plaintiff's ability to work, it is difficult to understand her objection to their inclusion in the RFC. Nonetheless, the ALJ explained the basis of the restrictions: Plaintiff's obesity and her heart disease symptoms and medication side effects. Accordingly, the Court concludes that the ALJ considered Plaintiff's medical condition as a whole and provided a sufficient rationale linking substantial evidence to each of her conclusions.

    **C.    Plaintiff's Additional Evidence**

Plaintiff's final argument concerns an "accommodation letter" she submitted to the Appeals Council following her hearing before the ALJ. At that hearing on March 5, 2021, the ALJ posed a hypothetical to the vocational expert with the Plaintiff's RFC except that the individual would have to elevate her legs at chest level every 30 minutes at the work station. R. 59–60. The VE testified this individual would be precluded from work. *Id*. The ALJ issued her unfavorable decision on April 5, 2021. Twelve days later, Plaintiff obtained this "accommodation letter," which is written on a prescription pad from Alabama Clinics and states in full: "Please allow the patient periodic 10 min intervals throughout the day to

elevate feet." R. 13. The Appeals Council declined review, and Plaintiff argues this was legal error.

The Appeals Council must consider evidence if a plaintiff shows the evidence is new, material, and chronologically relevant and that she had good cause for failing to present it sooner. 20 C.F.R. § 416.1470(a)(5)(b); *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015). Evidence is new only if it is noncumulative; it is chronologically relevant if it relates to the period on or before the ALJ's decision, and it is material if there is a reasonable probability that would change the administrative result. *Washington v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 871, 876 (11th Cir. 2019); *see also Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018); *Washington*, 806 F.3d at 1320.

In this case, the Appeals Council rejected Plaintiff's "accommodation letter" based on materiality, concluding that it "does not show a reasonable probability that it would change the outcome of the decision." R. 2. Plaintiff argues the evidence is material because it includes the limitation that she needs to elevate her legs periodically; therefore, if accepted and included in the RFC, the VE would change her testimony at the step five determination. R. 13, 22; Doc. 17 at 12.

As stated above, the "accommodation letter" is actually a one-sentence request that Plaintiff be allowed periodic, ten-minute breaks throughout the day to elevate her feet. The request itself is vague, as there is no explanation of how often these "periodic" breaks should occur. It could be every 30 minutes, or it could be every four hours. Additionally, although the prescription pad purportedly originated from Alabama Clinics, the author's

name on the note is illegible, and there is no support for the request. There is no way for the Court to determine the medical condition that forms the basis of the request or whether the request is based on objective medical evidence at Alabama Clinics, at another medical provider, or the Plaintiff's own subjective complaints.

Plaintiff is correct that a medical opinion based on treatment after the ALJ's decision may be chronologically relevant if it relates back to the relevant period. *Washington*, 806 F.3d at 1319–23 (concluding that medical opinion based on treatment after ALJ's decision was chronologically relevant because it was based on the claimant's description of his symptoms during the relevant period, provider had reviewed claimant's treatment records from the relevant period, and there was no evidence of decline since the ALJ's decision). Assuming the accommodation letter qualifies as a medical opinion, the Court cannot conclude from this one-sentence request on a prescription pad that it is based on Plaintiff's medical treatment before the ALJ's decision or that the provider who wrote it reviewed Plaintiff's medical records.

Further, even if the Court were to find that it is chronologically relevant, the records from Alabama Clinics do not support a periodic need to elevate Plaintiff's feet. The ALJ summarized these records as follows:

> The claimant had several visits also with a primary provider; however, the earliest records before the alleged onset date involved only a work physical and TB test. Near the alleged onset date, she did have a referral through this provider to the dermatologist and the cardiologist; however, other than the follow-up to obtain the results of the Doppler study already referenced, there is no documentation of her complaints regarding the severity or extensive ongoing nature of her assertions now. Generalized blood tests and several portions of the 2019 hospital record were documented in this provider's records (Exhibits 4F and 10F).

> When she did have a complaint, such as the issue of right foot pain in June 2020 after hitting her foot on the door of the truck, she did seek treatment here, and presumably obtained the orthopedic referral (Exhibit 10F/4). She also obtained a refill on Lasix in November 2020 with this provider; however, even that record documents her blood pressure at 122/75 and "mild" illegible writing pertaining to her extremities. Perhaps this indicated some swelling, as she now reports; however, there were no referrals or even suggestions of changes in her medications. She had a refill of Lasix at this time, and the record does show a substantial break here before having returned for treatment. There is no indication that she had run out of Lasix, but given the gap in treatment, it is also not consistent that she was having such extreme physical limitations as she suggested but had no referral to the cardiologist, no testing, no emergency room visits, and no changes even to her medications. The reason for her visit was a refill, not a new problem. She then, did not return for treatment even with this primary care provider until January 2021 when she sought treatment for mental health issues (Exhibit 10F).

R. 25. Thus, Plaintiff sought treatment from this provider for a TB test; obtained a cardiology referral and a dermatology referral; sought treatment after hitting her foot on the door of a truck; obtained a Lasix refill in November 2020, when records showed her blood pressure was 122/75 and she had a "mild" condition—possibly swelling but the records are illegible—relating to her extremities; and sought mental health treatment in January 2021. Plaintiff claims the new evidence bears on her ongoing treatment for ischemic heart disease, but her Alabama Clinic records relating to heart disease show only that she obtained a cardiology referral and may have had mild swelling in her extremities. Likewise, there is nothing in Plaintiff's remaining medical records supporting a need to elevate her feet periodically.[4] For these reasons, the Court finds that Plaintiff's newly

---

[4] Three months before the accommodation letter was prepared, Plaintiff's cardiology specialist, whose opinion the ALJ found persuasive, mentioned nothing about swelling or the need to periodically elevate Plaintiff's feet.

submitted evidence is immaterial, as it would not change the outcome of the Commissioner's decision. *See Popham v. Acting Comm'r of Soc. Sec.*, 681 F. App'x 754, 758 (11th Cir. 2017) (observing physician's opinion submitted to the Appeals Council was inconsistent with other evidence from relevant period); *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 881 (11th Cir. 2014) (finding doctor's opinions in questionnaire immaterial because they were conclusory and failed to explain reasons for opinion in any detail).

## V.   CONCLUSION

For the reasons stated above, it is ORDERED as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. 17) is DENIED;

2. The Commissioner's Motion for Summary Judgment (Doc. 20) is GRANTED; and

3. The Commissioner's decision is AFFIRMED.

A final judgment will be entered separately.

DONE this 22nd day of March, 2023.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE